IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DIANA SALVATORE, and DIANA M. SALVATORE, | Civil Action No. 11-1157 |
| Plaintiffs, | |
| | United States District Judge |
| v. | |
| MICHAEL FLEMING, TAYLOR MANAGEMENT, INC., and DIXIE REALTY, INC., d/b/a BUY-N-SELL Real Estate, | United States Magistrate Judge Cynthia Reed Eddy |
| Defendants. | |

**MAGISTATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

This is a *qui tam* action brought by Diana Salvatore ("Plaintiff"), on behalf of the United States Government against her former residential landlord, Michael Fleming ("Defendant Fleming"), and the realty management companies utilized by Defendant Fleming, Taylor Management, Inc., and Dixie Realty, Inc. d/b/a Buy-Sell Real Estate, under the False Claims Act, 31 U.S.C. § 3729 *et seq., as amended* ("FCA"). Plaintiff alleges that Defendants violated the FCA by knowingly submitting false claims to the federal government for rental subsidy payments under the Section 8 Low-Income Housing Choice Voucher ("Section 8") Program.

Before the Court is Defendant Fleming's motion to dismiss and strike under Federal Rules of Civil Procedure 10(b) and 12(6), or in the alternative, motion for summary judgment under Rule 56. (ECF No. 37).[1] The Court has considered Plaintiff's amended complaint,

---

[1] Also currently pending before the Court is a motion to dismiss filed by Defendant Fleming (ECF No. 61) seeking to dismiss his co-Defendant Dixie Realty's cross-claim for contribution and/or indemnification (ECF No. 58). Said motion will be addressed via separate Report and Recommendation.

1

Defendant Fleming's motion and brief in support thereof, Plaintiff's brief in opposition, Defendant Fleming's reply brief, and the documents attached to the parties' briefs. (ECF Nos. 33, 37, 38, 42 and 48).[2] For the reasons set forth below, it is respectfully recommended that this motion be denied.

## II. REPORT

### A. FACTUAL AND PROCEDURAL HISTORY

#### 1. Relevant Facts[3]

In August 2007, Plaintiff and Defendant Fleming, by and through Defendant Taylor Management, executed a Section 8 Request for Tenancy Approval and submitted it to the Housing Authority of the City of Pittsburgh ("HACP"). (Am. Compl. ¶ 44, ECF No. 33). Although the Section 8 Program is administered locally by the HACP, it is subsidized through the United States Department of Housing and Urban Development ("HUD"). (*Id.* at ¶¶ 1, 44). Plaintiff, as a low-income single mother of three minor children and who was pregnant with her fourth child at the time, was seeking to rent a residential premises owned by Defendant Fleming. (*Id.* at ¶ 38). The parties requested that the HACP authorize that Defendant Fleming lease the subject premises to Plaintiff for $900.00, which included the costs of water and sewage service, under the Section 8 Program. (*Id.* at ¶ 45). However, the HACP rejected this proposed rent and advised the Defendants that the maximum monthly amount Defendant Fleming could accept for the subject premises under the Section 8 Program was $737.00. (*Id.* at ¶ 45). On August 30, 2007, Defendants contacted the HACP indicating that Defendant Fleming agreed to accept this

---

[2] In the event that the parties' briefs contain different page numbers at the bottom of the page than in the ECF header, the Court will refer to the number in the ECF header.

[3] The following facts are taken entirely from the amended complaint. Additionally, given that the amended complaint is 163 paragraphs and that Defendant Fleming's motion rests upon procedural challenges, the Court will not recite all of the relevant facts, but only so much of the operative facts as necessary to place the Court's analysis in context.

amount. (*Id.* at ¶ 52). On October 16, 2007, the HACP approved the premises for Section 8 benefits. (*Id.* at ¶ 53).

On December 12, 2007, Defendant Fleming, by and through Defendant Taylor Management, executed a lease for the subject premises with Plaintiff and entered into a Section 8 Housing Assistance Payment Contract with the HACP, which both prescribed that the monthly rent was $737.00 and Defendant Fleming was responsible for the costs of water and sewage. (*Id.* at ¶¶ 60-62). Both the lease and Section 8 Housing Assistance Payment Contract were formally approved by the HACP on December 18, 2007, and were retroactive to October 16, 2007. (*Id.* at ¶ 70).

Notwithstanding these agreements, Defendant Fleming initially required Plaintiff to pay the difference between the rental amount approved by the HACP ($737.00) and the initial proposed amount ($900.00), totaling an additional $163.00 per month. Further, contrary to the terms of the agreements, Defendant Fleming required Plaintiff to pay costs of water and sewage. Plaintiff avers that from November 2007 through January 2010, Defendant Fleming, by and through Defendant Taylor Management and Defendant Dixie Realty,[4] fraudulently and illegally collected $3,859.00 in excess rent payments and $3,352.03 in excess water and sewage payments from Plaintiff. (*Id.* at ¶¶ 115, 123). Further, Plaintiff alleges that during that same period, due to "the Defendants' false certifications, material omissions, and rental overcharges," Defendants unlawfully received $19,473.00 in federal rent subsidies. (*Id.* at ¶¶ 122, 124).[5]

---

[4] Defendant Dixie Realty allegedly "assume[d] the tenant management agent duties previously held by Taylor Management for the rental of Ms. Salvatore's residential property" starting in October 2008. (*Id.* at ¶ 72).

[5] The amended complaint contains highly detailed averments and multiple charts setting forth the specific alleged over-payments, which varied throughout the years as a result of the agreements being annually renewed and adjusted by the HACP. For purposes of resolving this pending motion, however, it is unnecessary to delve into these specific details.

In January 2010, Plaintiff had a conversation with her HACP Housing Counselor and learned for the first time that Defendants had been improperly demanding payment from Plaintiff while also collecting the maximum monthly amount through the Section 8 Program. (*Id.* at ¶ 103). Therefore, from February 2010 through December 2010, Plaintiff stopped paying the additional amount to Defendants. (*Id.* at ¶ 104). Consequently, in August 2010, Defendant Fleming instituted eviction proceedings against Plaintiff, and in December 2010, Plaintiff and her four minor children vacated the subject premises and relocated to a different Section 8 residence. (*Id.* at ¶¶ 105-106).

### 2. Procedural Background

This case was filed as a *qui tam* action under seal by Plaintiff pursuant to the FCA on September 15, 2011. (Compl., ECF No. 2). The complaint was unsealed by the Court on May 20, 2014, upon notice by the United States of America that it had declined to intervene in the suit. (ECF No. 23). Defendant Fleming moved to dismiss and strike the complaint on August 21, 2014, (ECF No. 30), to which Plaintiff responded by amending her complaint on September 11, 2014. (Am. Compl., ECF No. 33). On September 23, 2014, Defendant filed the present motion to dismiss and strike the amended complaint for failure to state a claim, or in the alternative, motion for summary judgment. (Mot. to Dismiss, ECF No. 37).

In support of his motion, Defendant Fleming primarily asserts that this action is barred by the doctrines of claim preclusion and/or issue preclusion because Plaintiff asserted a counterclaim against Defendant Fleming in the prior state court eviction proceedings containing similar allegations to those in the amended complaint. (Def.'s Br. in Supp. at 3-4, 12-13, ECF No. 38). Defendant Fleming attached the counterclaim filed by Plaintiff in those proceedings (Ex. A, ECF No. 38-1) as well as the praecipe to settle and discontinue the eviction (Ex. B., ECF

No. 38-1) to his brief in support. Plaintiff filed a brief in opposition on October 23, 2014 (ECF No. 42), attaching the complaint in the eviction proceedings (Ex. A, ECF No. 42-1) and the settlement agreement relating to those proceedings (Ex. B, ECF No. 42-2). Neither party objects or disputes the authenticity or relevancy of the above attached documents, all of which are matters of public record. Finally, on November 7, 2014, Defendant Fleming filed a reply brief. (ECF No. 48). As a result, the matter has been fully briefed and is ripe for disposition.

B. STANDARD OF REVIEW

1. Rule 12(b)(6)

Recently, our court of appeals aptly summarized the appropriate standard of review when considering a defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) as follows:

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler* [*v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)] (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). Additionally, while "[t]he District Court must accept the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Fowler*, 578 F.3d at 210. (citing *Iqbal*, 556 U.S. at 663). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

5

In addition to the complaint itself, the Court may consider "exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Inds., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "In considering external yet undisputably relevant and authentic documents, the court need not covert the motion to dismiss into a motion for summary judgment." *Reginella Const. Co., Ltd. v. Travelers Cas. And Sur. Co. of America*, 949 F.Supp.2d 599, 609 (W.D.Pa. 2013) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

The parties do not dispute the relevancy or authenticity of the documents relating to the state court eviction proceedings attached to the parties' briefs. Indeed, the amended complaint references the eviction proceedings, the documents are matters of public record, and Defendant Fleming's motion is based upon those proceedings. Accordingly, the Court may consider these additional documents without converting this motion into a motion for summary judgment.

### 2. Rule 9(b)

Furthermore, the heightened and more rigorous pleading standard set forth in Rule 9(b) is applicable to actions brought under the FCA, including the allegations of fraud in the amended complaint. *United States ex rel. Wilkins v. United Health Group*, 659 F.3d 295, 301 n. 9 (3d Cir. 2011) (citing *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs*, 149 F.3d 227, 234 (3d Cir. 1998)). Therefore, a plaintiff alleging fraud under the FCA must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*; *Iqbal,* 556 U.S. at 686 ("But 'generally' is a relative term. In the context of Rule 9, it is to be compared

to the particularity requirement applicable to fraud or mistake."). In order for a plaintiff to fulfill the "particularity" requirement of Rule 9(b) in an FCA claim, "it is sufficient for a plaintiff to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia v. Rental Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014).

C. **ANALYSIS**

1. **False Claims Act and Section 8 Program**

"The FCA allows private persons, called relators, to bring *qui tam* actions on behalf of the United States against persons or entities who knowingly submit false claims to the federal government." *United States ex rel. Richards v. R&T Inv. LLC*, 29 F.Supp.3d 553, 560 (W.D.Pa. 2014) (hereinafter "*R&T*"); 31 U.S.C. § 3730(b)(l). "The primary purpose of the FCA is to indemnify the government – through its restitutionary penalty provisions – against losses caused by a defendant's fraud." *Wilkins,* 659 F.3d at 304 (internal quotations and citations omitted). "A plaintiff, in order to establish a prima facie FCA violation under section 3729(a)(1), must prove that (1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." *Id.* at 304-305 (internal quotations and citations omitted).

In a recent decision of this Court regarding a *qui tam* suit under the FCA, Judge Hornak provided the following summary and history of the Section 8 Program:

> In 1937, the United States Housing Act, 42 U.S.C. § 1437 et seq., was enacted to provide housing by making payments directly to local housing authorities. *See United States v. Southland Management Corp.*, 326 F.3d 669, 671 (5th Cir.2003). Section 8 was added to the United States Housing Act in 1974 to authorize the making of "assistance payments" to encourage private property owners to provide housing to low-income individuals. *See* 42 U.S.C. § 1437f. The Department of

7

Housing and Urban Development ("HUD") administers the Section 8 program, and promulgated the federal regulations governing the implementation and administration of the program at 24 C.F.R. Pt. 982. In the HUD Housing Choice Voucher Program and the HUD certificate program, HUD pays rental subsidies so that eligible families can afford proper housing. 24 C.F.R. § 982.1. These programs are generally administered by State or local governmental entities called public housing agencies ("PHAs"), with HUD providing housing assistance funds to those PHAs. *Id*. The PHAs then remit these [housing] assistance payments ("HAP") on behalf of eligible tenants to the private property owners, in accordance with housing assistance payment contracts entered into between the PHAs and the property owners (and executed on forms directed by HUD). 24 C.F.R. § 982.162. The amount of these assistance payments, made directly to the private property owners in the form of a subsidy, is determined by what the tenant can afford to pay and what the private property owner could otherwise expect to charge under the prevailing market rates. 42 U.S.C. §§ 1437a(a)(1), 1437f(c). To receive assistance payments, a property owner must enter into the above-mentioned housing assistance payment contract ("HAP Contract"). 42 U.S.C. § 1437f(c); 24 C.F.R. § 811.102(2002).

*R&T*, 29 F.Supp.3d at 562. In *R&T*, which is factually similar to the present case, the Court found that the plaintiff plausibly stated a prima facie FCA violation in alleging facts to show that a landlord participating in a Section 8 Program knowingly submitted false claims to the federal government for rental subsidy payments. *Id.* at 561-566.

Here, Defendant Fleming does not assert that Plaintiff has failed to plead sufficient factual content to state a prima facie FCA violation. Instead, he argues, as discussed below, that Plaintiff's claim should be dismissed based on other procedural grounds. Accordingly, the Court will limit its analysis to only the arguments offered by Defendant Fleming.[6]

### 2. Claim Preclusion

---

[6] The Court notes that Defendant Fleming stated in his brief in support of his motion to dismiss that "one of the questions presented through this motion is whether the complaint pleads sufficient facts to demonstrate that Fleming is a proper party to the litigation." (Def.'s Br. in Supp. at 10-11, ECF No. 38). However, Defendant Fleming did not provide any reasoning, explanation, or legal support in favor of this sweeping assertion. In response, Plaintiff more than sufficiently rebutted this argument by identifying the various allegations in the amended complaint implicating Defendant Fleming for violation of the FCA. Accordingly, to the extent that Defendant Fleming challenges whether Plaintiff has established that he is a proper party to this action, he has failed, as the moving party, to establish such an unsupported, bare assertion.

Defendant Fleming contends that Plaintiff "could have raised the claims brought in the instant case in the previous" eviction proceedings, which was initiated by Defendant Fleming and dismissed with prejudice pursuant to the parties' settlement agreement. (Def.'s Br. in Supp. at 3, ECF No. 38). Therefore, because the allegations in Plaintiff's counterclaim in the eviction proceedings were "virtually identical to those raised in the instant [amended] Complaint," Defendant Fleming urges the Court to find that the present action is barred by the doctrine of claim preclusion. (*Id.* at 4).

Claim preclusion, also known as *res judicata*, "gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding." *Churchill v. Star Enterprises*, 183 F.3d 184, 194 (3d Cir. 1999) (internal quotations and citations omitted). "To succeed in the assertion of the defense, the defendant must show there has been '(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same causes of action.'" *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010) (quoting *Churchill*, 183 F.3d at 194). "We '[do] not apply this conceptual test mechanically,' but 'focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit.'" *Id.* Moreover, "[b]ecause the courts have not defined precisely 'causes of action,' for claim preclusion purposes, we take a broad view, focusing on the underlying events of the two causes of actions." *Churchill*, 183 F.3d at 194 (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984)).

Here, Defendant Fleming argues that the FCA claims could have been brought in the prior state court case relating to the eviction proceedings. (Def.'s Br. in Supp. at 12-13, ECF No. 38). This argument ignores the fact that the United States Government was not involved in the

eviction proceedings and that the causes of action are completely different. For instance, in the state court eviction proceedings, Plaintiff filed the counterclaim, which made no mention of a *qui tam* claim, on her individual behalf. In contrast, the present *qui tam* action was filed by Plaintiff as a representative of the public in accordance with the procedures set forth in the FCA and on behalf of the United States Government, which is entitled to at least 70 percent of any settlement recovery despite not intervening in the case. *See* 31 U.S.C. § 3730(d)(2). Practically speaking, it would have been impossible for Plaintiff to initiate the FCA claim as a counterclaim in the state court eviction proceedings. Likewise, it would have been impossible for Plaintiff to settle a case on behalf of the United States Government without complying with the statutory requirements of the FCA. Indeed, a relator can only bring a *qui tam* claim under the FCA by filing the claim under seal and allowing the United States Government at least 60 days to determine whether it would like to intervene. *See* 31 U.S.C. § 3730(b). This, of course, could not have occurred in the state court eviction proceedings.

Furthermore, in asserting his position, Defendant Fleming conveniently neglected to mention that the case upon which he primarily relies, *Cole v. Bd. of Tr. of the Univ. of Illinois*, 497 F.3d 770 (7th Cir. 2007), was abrogated by the same court nearly two years later in *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009) (hereinafter "*Lusby*"). *See* (Def.'s Br. in Supp at 11-13, ECF No. 38). Only after Plaintiff rightfully raised this issue, *see* (Pl.'s Br. in Opp'n at 14-15, ECF No. 42), did Defendant Fleming acknowledge the existence of *Lusby*. *See* (Def.'s Reply Br. at 1-3, ECF No. 47). In his reply brief, however, Defendant Fleming unpersuasively asserted that *Cole* is still applicable to this case, arguing that *Lusby* did not expressly overrule *Cole* and "the procedural complexities that existed in *Lusby* do not exist" in this case. (*Id.* at 2). To be clear, *Lusby* stated that while its holding did not "technically

overrule" *Cole*, "as a practical matter [its] decision means that the outcome of a private employment suit never precludes a *qui tam* action (or a False Claims Act suit directly by the United States)." 570 F.3d at 853. The *Lusby* court specifically observed that the litigants in *Cole* had not raised the issue of whether the two suits had involved the same parties or parties in privity. *Id*. at 851.

Defendant Fleming has failed to articulate a basis for the Court to conclude that when a relator gets sued in state court for possession and back rent and asserts a counterclaim solely in her individual capacity, she is subsequently barred from bringing a *qui tam* claim on behalf of the United States Government under the FCA. Moreover, Defendant Fleming's assertion that *Lusby* contained greater procedural complexities than this case should be rejected. Unlike in *Lusby* where the plaintiff initiated both the prior employment suit and the *qui tam* action, Plaintiff here did not initiate the prior state court action, i.e., the eviction proceedings. Instead, Plaintiff only raised the factual allegations in the counterclaim as an individual defense in that suit. Accordingly, the procedural history of this case is more complex than the procedural history of *Lusby*. In arguing otherwise, Defendant Fleming has ignored the requisite procedural steps for a relator to initiate an FCA suit as discussed above, and has ignored that the plaintiff in *Lusby* initiated *both* the prior employment suit and the *qui tam* action.

Additionally, the Court finds the rationale advanced in *Lusby* to be compelling. In *Lusby*, the Seventh Circuit joined the Fifth Circuit in holding that "the resolution of personal employment litigation does not preclude a *qui tam* action, in which the relator acts as a representative of the public." 570 F.3d at 851; *see also United States ex rel. Laird v. Lockheed Martin Engineering & Science Services Co*., 336 F.3d 346, 357-360 (5th Cir. 2003). The Court in *Lusby* reached this conclusion because (1) the United States did not have the opportunity to

11

intervene in the relator's personal suit, (2) the United States did not get the requisite statutory notice, and (3) the relator's prior suit did not advance a *qui tam* claim. 570 F.3d at 853. As discussed above, all of these factors are present in this case.

Further, *Lusby* appropriately recognized that while "the United States is not a 'party' to a *qui tam* suit unless it intervenes, it is nonetheless a real party in interest – which is to say that its financial interests are at stake." *Id.* at 852 (citing *United States ex rel. Einstein v. New York City*, 556 U.S. 928 (2009)). As in *Lusby* where the Court found that "[i]t would be inappropriate to snuff out [the government's interest] just because a potential relator thoughtlessly omitted a *qui tam* claim from a personal suit," 570 F.3d at 852, the Court here finds it would be similarly inappropriate to obviate the government's interest because of a counterclaim filed by a relator in defense to eviction proceedings where it was impossible to bring a *qui tam* claim at that time. And while the parties have not identified, and the Court is not aware of, any decision in the Third Circuit addressing this specific issue, the Court concludes that under the general framework applicable to analyzing claim preclusion in the Third Circuit, Defendant Fleming has failed to demonstrate the Court that this *qui tam* action is barred it.[7]

3. **Issue Preclusion**

In his brief in support, Defendant Fleming also asserted that this action is barred by issue preclusion, but offered no actual argument or legal authority to advance such a theory. *See* (Def.'s Br. in Supp. at 3, 11). Rather, Defendant Fleming solely focused on arguing that this suit should be dismissed based on claim preclusion. Accordingly, Defendant Fleming has failed to

---

[7] Plaintiff alternatively discusses the settlement agreement regarding the state court eviction proceedings (ECF No. 42-1 at 5-8) in arguing that this suit is not barred. *See* (Pl.'s Br. in Opp'n at 16-19, ECF No. 42). Defendant Fleming responded to this argument, disagreeing with Plaintiff's interpretation of the agreement. (Def.'s Br. in Supp. at 3-5, ECF No. 48). However, because this private agreement between the parties had no impact on Plaintiff's ability to bring the present *qui tam* action on behalf of the United States Government, the Court need not interpret it.

meet his burden in establishing that the amended complaint should be dismissed because of issue preclusion. However, even assuming that Defendant Fleming properly raised this issue, it is plainly apparent that issue preclusion is inapplicable to this case.

Issue preclusion, also known as collateral estoppel, refers "to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *Brown v. Tucci,* 960 F.Supp.2d 544, 566 (W.D.Pa. 2013) (Fischer, J.) (noting that the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give preclusive effect to decisions of state courts, which "has long been understood to encompass the doctrines of res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'"). In determining the issue preclusive effect of a state court judgment, the Court applies the rendering state's law of issue preclusion. *Thomas v. Parkway West Career and Tech. Ctr.*, 2013 WL 1195115, *5 (W.D.Pa. 2013) (Schwab, J.) (citing *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 381–382 (1985)). "Issue preclusion occurs when: '(1) the issue presented in a later action is identical to the one decided in a prior action; (2) the prior action resulted in a final judgment on the merits; (3) the parties against whom issue preclusion is sought are the same or are in privity; and (4) the party against whom preclusion is sought had 'a full and fair opportunity to litigate the issue in the prior action.'" *Tucci*, 2012 WL 2190145 at *2 (quoting *Straker v. Deutsche Bank Nat. Trust*, 2011 WL 398374 at *4 (M.D.Pa. 2011)).

Here, the issue presented in the earlier case is not the same as in this case, and the government, which was not a party and did not have an interest in the state court eviction proceedings, did not have a full and fair opportunity to litigate in the prior case. Accordingly, Defendant Fleming's unsupported assertion to the contrary is wholly without merit.

### 4. Compliance with Rule 10(b)

Defendant Fleming also argues that Plaintiff failed to comply with Rule 10(b), claiming that she failed to plead separate counts and supporting facts for each Defendant in the amended complaint. (Def.'s Br. in Supp. at 13, ECF No. 38). Rule 10(b) requires the plaintiff to state claims in "numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). The purpose of the Rule 10(b) is to "create clarity in pleadings and provide the defendants with a 'point of reference for responding.'" *Brown v. Joseph McCormick Const. Co.*, 2014 WL 6612892, *1 (W.D.Pa. Nov. 20, 2014); *Young v. Centerville Clinic, Inc.*, 2009 WL 2448003 (W.D.Pa. Aug. 10, 2009).

Although the amended complaint is excessively long, the allegations contained therein are clear and precise, and the Defendants should be able to meaningfully respond. It would be impractical for Plaintiff to reassert her allegations as Defendant Fleming has requested, especially when considering that Plaintiff has alleged that Defendant Fleming and his agents engaged in concerted conduct, which could be difficult to disentangle at this time. Therefore, this portion of Defendant Fleming's motion is denied as well.

### D. CONCLUSION

Based on the foregoing, it is recommended that Defendant Fleming's motion to dismiss and strike the amended complaint, or in the alternative, motion for summary judgment be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and the Local Rules for Magistrates, the parties have until <u>March 9, 2015</u>, to file objections to this report and recommendation. Failure to file timely objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: February 23, 2015.                                By the Court,

                                                         s/ Cynthia Reed Eddy
                                                         Cynthia Reed Eddy
                                                         United States Magistrate Judge


cc: Counsel of Record via CM-ECF